Almonte v Shaukat (2022 NY Slip Op 02221)

Almonte v Shaukat

2022 NY Slip Op 02221

Decided on April 05, 2022

Appellate Division, First Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered: April 05, 2022

Before: Gische, J.P., Oing, Scarpulla, Shulman, Higgitt, JJ. 

Index No. 805363/17 Appeal No. 15619-15619A Case No. 2021-00186, 2021-02886 

[*1]Jahaira Almonte, Plaintiff-Appellant,
v
Nadia Shaukat, M.D., et al., Defendants-Respondents.

Hasapidis Law Offices, Scarsdale (Annette G. Hasapidis of counsel), for appellant.
Marulli, Mannarino, Erichsen & Tomaszewski, LLP, New York (Francesca M. Erichsen of counsel), for Nadia Shaukat, M.D., respondent.
Martin Clearwater & Bell, LLP, New York (Barbara D. Goldberg of counsel), for Fabienne Varas, R.N., New York-Presbyterian/Queens and New York Presbyterian Healthcare System, Inc., respondents.
Lewis Brisbois Bisgaard & Smith LLP, New York (Dean L. Pillarella of counsel), for Monica Rogan, P.A. and Queens Emergency Medical Associates, PLLC, respondents.

Judgment, Supreme Court, New York County (Eileen A. Rakower, J.), entered January 26, 2021, to the extent appealed from as limited by the briefs, dismissing the complaint as against defendants Nadia Shaukat, M.D., Fabienne Varas, R.N., New York-Presbyterian/Queens (NYPQ), Monica Rogan, P.A., and Queens Emergency Medical Associates, PLLC (QEMA) (defendants), and appeal therefrom bringing up for review an order, same court and Justice, entered on or about December 22, 2020, which granted defendants' motions for summary judgment dismissing the complaint as against them, unanimously reversed, on the law, without costs, the judgment vacated, and the motions denied. Appeal from the order, unanimously dismissed, without costs, as subsumed in the appeal from the judgment.
Plaintiff presented to the NYPQ emergency department on February 27, 2016, complaining of a painful lump in her breast. She was triaged by Varas, a registered nurse, and examined by Rogan, a physician's assistant. According to plaintiff, Rogan told her that the lump was only a cyst and gave her information about breast cysts and fibrocystic breast changes, but did not give her any discharge instructions and did not tell her to follow up with any specific providers or additional tests. Further, plaintiff produced the documents that she received upon discharge, which do not provide a treatment plan that includes follow-up to rule out cancer.
Plaintiff's medical records state that Rogan diagnosed plaintiff with an unspecified breast lump, recommended that she follow up for an ultrasound and mammogram, and provided the phone number and address for a breast clinic. Rogan testified that plaintiff would have been, and in fact was, given discharge instructions and follow-up information, as shown by plaintiff's signature on the discharge instructions. Varas testified that a patient's signature on the discharge instructions usually verifies that the nurse saw the patient again and that the patient understood what had been explained. Although defendants produced a signed discharge instruction form, the form does not contain the treatment plan that is otherwise set out in plaintiff's chart. The signed form makes reference to a breast cyst and provides a follow-up location for a breast clinic without further instruction. Neither Varas nor Rogan had an independent recollection of their examination or treatment of plaintiff, and plaintiff denied seeing Varas again after the triage. No party disputes that, the day after plaintiff's discharge, Rogan forwarded plaintiff's chart to Dr. Shaukat, the attending physician supervising Rogan, to cosign. Likewise, no party disputes that Dr. Shaukat herself never examined plaintiff.
In November 2016, plaintiff visited a primary care physician who referred her for an ultrasound, which was performed in December 2016. The results of the ultrasound were highly suggestive of malignancy. Additional examinations and diagnostic tests performed in March 2017 ultimately [*2]confirmed that plaintiff had stage III breast cancer. By the time plaintiff chose to begin treatment, in November 2018, her condition had worsened to stage IV breast cancer.
Plaintiff commenced this medical malpractice action alleging that Rogan departed from good and accepted medical practice by failing to give her a diagnosis and adequate discharge instructions; that Varas so departed by failing to recognize that the discharge instructions were deficient; that Dr. Shaukat so departed by failing to recognize the deficiencies in plaintiff's chart and instruct Rogan to correct them before cosigning it; and that defendants' departures were a substantial factor in diminishing plaintiff's chance of a better outcome, or increased her injury, with respect to her breast cancer. Supreme Court granted defendants' motions for summary judgment dismissing the complaint as against them.
Defendants Varas and Rogan made a prima facie showing that they did not depart from the applicable standard of care in providing plaintiff with verbal or written discharge instructions (see Winegrad v New York Univ. Med. Ctr., 64 NY2d 851, 853 [1985]). There are disputed issues of fact, however, that preclude summary judgment, including what, if anything at all, plaintiff was told upon discharge.
Dr. Shaukat established prima facie that she did not depart from the applicable standard of care through her expert physician's opinion that cosigning a physician assistant's chart "is a customary administrative function in major accredited hospitals," and that she acted within that standard of care by cosigning plaintiff's chart. In opposition, however, plaintiff raised an issue of fact through her expert physician's opinions that "this function is not merely administrative"; that, in accordance with American Medical Association policy, "physician[s] must review the [physician assistants'] work to ensure conformity with the standard of care, not to simply rubberstamp medical records for 'administrative' purposes only"; and that Dr. Shaukat failed to conform to this standard of care by not recognizing alleged deficiencies in plaintiff's chart and by not instructing Rogan to call plaintiff to tell her that she required imaging promptly in order to rule out a more serious condition, such as breast cancer.
Finally, defendants failed to establish prima facie that any departure from the applicable standard of care did not proximately cause plaintiff's injuries, because their respective experts offered no opinion as to whether the 13 months between plaintiff's presentation at NYPQ in February 2016 and her ultimate diagnosis of breast cancer in March 2017 diminished her chances of a better outcome and odds of survival (see Schaub v Cooper, 34 AD3d 268, 271 [1st Dept 2006]; Joseph v Brodman, 220 AD2d 331, 331 [1st Dept 1995]). In any event, plaintiff raised an issue of fact through her expert physician's opinions as to the progression of her cancer between February 2016 and March 2017, and [*3]beyond, and how the 13-month delay in being diagnosed with breast cancer led to her developing a more advanced stage of breast cancer and reducing
her odds of survival by at least 13% (see Polanco v Reed, 105 AD3d 438, 441-442 [1st Dept 2013]; King v St. Barnabas Hosp., 87 AD3d 238, 245 [1st Dept 2011]).
THIS CONSTITUTES THE DECISION AND ORDER
OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: April 5, 2022